F. G. BOETTCHER, Suing on Behalf of Himself and All Other Persons Similarly Situated, Appellant, v. T. E. McDOWALL, Wm. Wade, Wm. Eastman, Constituting the Board of County Commissioners of Grant County; J. G. Patterson, County Treasurer; Robert D. Berry, County Auditor; Grant County, a Municipal Corporation; and· J. Henry Bellman, Respondents.

(174 N. W. 759.)

**Counties — division of counties — construction of courthouse by new county — right of new county to apply surplus from taxation fund to building fund.**

In an action to enjoin the construction of, and payment for, a courthouse, where no temporary injunction forbidding the construction was issued, and where, at the time of the trial on the merits, the courthouse was practically completed, it is *held:*

1. Where a new county is organized and, in the settlement with the county from which the territory comprising the new county was severed, the taxes previously levied by the original county are assigned to and collected by the new county, such taxes being in excess of the expenditures for the various purposes for which the same were levied during the current fiscal year, the balance so existing at the end of the fiscal year are subject to transfer to the building fund, under §§ 3287 and 3288, Compiled Laws of 1913.

**Counties — contract for construction of bridges not a lien on balance in bridge fund.**

2. Where, prior to the close of the first fractional fiscal year, the county commissioners of a new county take preliminary steps looking toward the construction of bridges during the succeeding fiscal year, and a written contract is executed with a successful bidder in the succeeding fiscal year, such contract does not create a special charge upon the balance in the bridge fund as it existed at the close of the fractional fiscal year, but is a proper item entering into the county budget of the current fiscal year.

**Counties — control of emergency fund not subject to payment of warrants drawn upon other funds.**

3. An emergency fund created by tax levy is subject to the control of the board of county commissioners, upon whom is imposed the duty of directing the fiscal affairs of the county; and in the absence of a statute so requiring, such fund is not automatically subject to the payment of warrants drawn upon other funds of the county which may be overdrawn at the time the warrants are issued.

**Counties — construction of courthouse in new county — when vote is not required.**

4. Section 3280 of the Compiled Laws of 1913 does not require a vote upon the question of the construction of a courthouse in a new county, where the same is constructed from a building fund comprised of unexpended balances in funds assigned to the new county by the county from which the territory is segregated.

**Counties — injunction proceedings — court of equity will not interfere where new county has sufficient funds and building is practically completed.**

5. Where, during the pendency of litigation started for the purpose of enjoining the construction of a courthouse, the building is practically completed and the place at which it is located is fixed by popular election as the county seat, there being no fraud shown and no contention that the building is not well worth the contract price, and it appearing that the county had sufficient funds legally applicable to the discharge of the contract and that the commissioners had ample authority to proceed with the work, there is no equity in favor of the plaintiff to support his prayer for injunction against payment on the ground that the contract was not legally let.

Opinion filed June 28, 1919. Rehearing denied September 8, 1919.

Appeal from District Court of Grant County, Honorable *W. C. Crawford,* Judge, sitting at request of Honorable *J. M. Hanley,* District Judge.

Affirmed.

*Jacobsen & Murray,* for appellant.

The diversified farming fund, the road fund, the county bridge fund, and the poor fund, and the county road fund (special road) fund, are not transferable under § 3287, because there is no provision under this section for so transferring. Union P. R. Co. v. Cheyenne Co. 90 N. W. 917.

They are not special funds because they are created by law and not by act of the board, or expressly limited in the amount of their receipts. Comp. Laws 1913, § 2150; Potter v. Fowzer, 21 Pac. 119; Hughes v. Board of Commissioners, 127 N. W. 613.

That the funds derived by levy under § 1945 cannot be transferred is clearly apparent from the language of that section. Oakley v. Valley County, 59 N. W. 368; Union P. R. Co. v. Cheyenne Co. supra; Molley v. New Rochelle (N. Y.) 30 L.R.A.(N.S.) 126, 92 N. E. 94; (Mo.) 109 S. W. 656, 37 L.R.A.(N.S.) 1045.

A contract for the construction of a courthouse which cannot be paid for out of the annual revenue of the current year if not submitted to a vote of the people is void. Comp. Laws 1913, §§ 3280, 3294; Tekama County v. Sisson (Col.) 99 Pac. 64; McKinnon v. Robinson, 24 N. D. 367; Bannock County v. C. Bunting & Co. 37 Pac. 277; State ex rel. v. Butler Co. 94 Pac. 1004; Dunbar v. Canyon Co. 49 Pac. 409; Spencer v. Taylor, 77 Pac. 276.

"Current year," as used in the statute, means the year between levies. Clark v. Lancaster County (Neb.) 96 N. W. 599.

The bridge fund and the road fund and other funds described in § 2150 for which separate levies are made can only be used for the purposes for which levies thereunder are made. N. D. Const. § 175; Smith v. Haney (Kan.) 85 Pac. 550; Northrup v. Hoyt (Or.) 49 Pac. 754; Union P. R. Co. v. Cheyenne Co. 90 N. W. 917; Stinson v. Thorson, 34 N. D. 372, especially opinion on the petition for rehearing commencing on page 383 of that report.

Notice should have been published at least thirty days prior to the opening of bids for at least four publications. Comp. Laws 1913, § 3296.

The contract provided for an incompleted building. It was void. McKinnon v. Robinson, 24 N. D. 367; Hoffman v. Board of Com. (Mont.) 44 Pac. 973.

*Sullivan & Sullivan* (*W. F. Burnett,* of counsel), for respondents.

There is no claim of fraud, no claim that all persons were not given an opportunity to bid, and no claim, nor can there be any claim, that anyone was prejudiced thereby. Upon this statement of fact, the law is well settled. Newport News v. Potter, 58 C. C. A. 483, 122 Fed. 321; Connersville v. Merrill, 42 N. E. 397, 48 N. E. 1042.

There is nothing in the contract prejudicial to the rights of the county, and minor variances in the contract, not prejudicial to interested parties, will not invalidate the contract. 28 Cyc. 1037, note 8; Joyce v. Falls City Artificial Stone Co. 64 S. E. 912; Mankato v. Barber Asphalt Co. 142 Fed. 329; Commissioners v. Cincinnati Steam Heating Co. 12 L.R.A. 502.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Grant county denying a permanent injunction against the

construction of a courthouse and against the payment therefor.  The
case is in this court for trial *de novo*.  From the record it appears that
Grant county was organized in November, 1916; that the territory em-
braced within it was taken from Morton county and consists of forty-
seven full and eleven fractional congressional townships.  Prior to
the organization of Grant county and at the appropriate time
for levying taxes for the then current fiscal year, the board of
county commissioners of Morton county made an annual tax levy
for the various purposes for which levies are authorized, aggre-
gating $265,555, which levy constituted the basis of county taxes
for the tax lists of the fiscal year beginning July 1, 1916, and end-
ing June 30, 1917, applicable to all of the territory at that time
embraced within Morton county.  After the organization of Grant coun-
ty, in November, 1916, a settlement was effected between the county
commissioners of Grant county and Morton county, according to which
Grant county was to receive the taxes available under this levy as as-
sessed against the property falling within its jurisdiction.  The Morton
county debt was also adjusted, and the portion assigned to Grant county
liquidated as required by §§ 3212 and 3221–3225, Compiled Laws
of 1913, inclusive, the indebtedness so assumed amounting to $30,595-
.21.  The county of Grant began its fiscal operations on January, 1917,
and at this time there was in process of collection the proceeds of the
tax levy previously made by the county commissioners of Morton coun-
ty, and which, under the settlement, fell to Grant county; that is, the
tax, both current and delinquent, spread against the property within
the limits of Grant county constituted the assets of Grant county, and
the proceeds were not subject to disbursement by the board which levied
them.  An audit made by the accountant Carl O. Jorgenson, as of July
1, 1917, shows that various funds of Grant county might properly be
credited with $85,430.93, against which liabilities existed amounting
to $53,963.69, making a total favorable balance in all funds of $32,-
477.24.  It also shows that from the various funds showing favorable
balances, there was transferred to the building fund $38,702.40.  It
seems that there was no attempt made to transfer from the county reve-
nue fund and that this fund was overdrawn on July 1, 1917.  Transfers
were made in specific amounts, and in some instances exceeded slightly
the balances left in the funds from which transfers were made, and in

other instances all of the balances were not transferred. The existence of some of the credit balances as shown in the Jorgenson report is disputed, and in so far as the disputed items are material to the determination of the case, they will be later considered.

Anticipating the existence of balances that it would be possible to transfer in July, 1917, and recognizing the need for a suitable building to accommodate the various offices and to properly keep the records of the new county, the county commissioners, on April 6th, instructed the county auditor to advertise for bids for the construction of a county courthouse, the bids to be opened on May 8th following, and to be in accord with plans and specifications on file. The bids were received on May 8th, and on July 7th following the board passed resolutions transferring certain funds to the building fund, accepting the bid of J. H. Bellman, and directing the county auditor to enter into a contract with him for the erection of the courthouse.

The appellant contends that the injunction should issue as prayed for on three grounds,—first, that there was no money in the funds which the defendants transferred to the building fund, or if balances existed they were not sufficient in amount to discharge the contract obligations; second, that the county commissioners had no legal authority to transfer the various balances to the building fund; and, third, that the letting of the contract was illegal and in excess of authority for the reasons, (a) that it was not approved by a majority of the voters of Grant county; (b) that it involved an extraordinary expenditure, or one greater than could be paid out of the revenue of the current year; (c) that the advertisement for bids was not legal; (d) that proposals were not in accord with the specifications; (e) that the contract was not let to the lowest bidder; and (f) it provided for an incompleted courthouse.

It is argued that the report of the expert accountant employed by the plaintiff T. H. Poole shows that the various funds from which transfers were made in July were in fact previously overdrawn, or to such an extent subject to obligations contracted prior to July 1st that, taking the most favorable view, it could not be said that there were sufficient balances in them to be transferred for courthouse construction purposes. The audits of the experts for both parties for the most part agree, but a difference arises as to the propriety of considering certain items as charges against the funds. An instance of this discrepancy that may

be said to be somewhat characteristic is found in connection with the bridge fund. The Jorgenson report shows that the bridge fund balance on July 1st was $15,671.96, whereas the Poole report shows that the fund was overdrawn at that time on account of two bridges assumed to have been purchased before July 1st, for the price of $12,170. (This report credits the bridge fund with $11,393.24.) But an examination of the commissioners' proceedings shows that the auditor was instructed to advertise for the purchases in question on May 11th; that the bids were opened on June 11th; that on June 13th the auditor was instructed to order the lowest bidder, the Fargo Bridge & Iron Company, to erect the proposed bridges. It further appears that formal contracts were executed on July 12th, or subsequent to the close of the previous fiscal year. We need not consider whether or not the acceptance of the proposal of the Fargo Bridge & Iron Company resulted in a contract, or whether the action of the board on June 11th, in instructing the auditor to order the construction of bridges, resulted in a contract (Bayne v. Thorson, 37 N. D. 187, 163 N. W. 822; Edge Moor Bridge Works v. Bristol County, 170 Mass. 528, 49 N. E. 918); for the parties, by subsequently entering into formal contracts, merged their prior negotiations. These contracts being made after the close of the fiscal year, on July 1st, did not create special charges against the fund remaining from the previous year from which the transfer was later made. See Cooper v. Wait, 106 Ky. 628, 51 S. W. 161. The work contemplated was to be done during the fiscal year 1917–1918, and it would be the duty of the county commissioners to take into consideration the amount to be so expended in levying for the bridge fund for that year. It was therefore proper for the county commissioners, assuming that they had authority to transfer funds, to consider the unexpended balances in the bridge fund to be fixed as of July 1st, and as not subject to the charge of the subsequent bridge contracts, even though the same were in contemplation prior to the close of the fiscal year. From this it would follow that there was a balance of $11,000 or more subject to transfer if the transfer were authorized.

There was also transferred from the emergency fund $2,832.70. The Jorgenson report shows that there was at the time a favorable balance in this fund of $4,167.33, while the Poole report shows a credit balance of $2,842.60, or a sum slightly in excess of the balance so transferred.

But it is contended by the appellant that, since the county general revenue fund was overdrawn, the emergency fund was necessarily subject to the payment of outstanding warrants drawn on the general revenue fund, and that this credit balance would consequently be entirely wiped out. By § 172 of the Constitution and § 3276, Compiled Laws of 1913, the duty to supervise and control the fiscal affairs of the county is imposed upon the county commissioners. There is no statute which makes it the mandatory duty of the board to apply the emergency fund to the payment of warrants drawn on other funds when the same happen to be overdrawn, nor do we find any provision of law which subjects the emergency fund automatically to the payment of warrants drawn on overdrawn funds. Thus, the emergency fund is left subject to the control of the board to the same extent as is any other fund, and the duty of deciding whether or not it shall be applied in liquidation of warrants drawn upon other funds is a duty devolving upon the commissioners, and one which is not ordinarily to be judicially controlled. The commissioners may decide whether they will levy sufficient moneys for the general revenue fund to meet outstanding warrants, or whether they will turn balances from the emergency fund or from other funds into the county general revenue fund. It follows from this that the balance in the emergency fund was subject to whatever authority the commissioners had to transfer.

The foregoing conclusions, denying the contentions of the appellant as to the balances in the bridge fund and the emergency fund, result in a finding that there was subject to transfer on the date of the making of the contract in each of the two funds amounts in excess of the sum transferred by resolution, the amount thus transferred being $13,832.70. This is more than the apparent liability under the contract. But if there be added some smaller balances, the existence of which is not seriously questioned, there is no doubt that the contract and its incidentals do not exceed the available funds. It is unnecessary, therefore, to examine the further contentions of the appellant with respect to the condition of other funds transferred at the time and subsequently. Neither do we deem the exact date of transfer material; for if the balances existed, the power could be exercised at any time during the regular meeting in July, or, as to special funds, at any meeting. Comp. Laws 1913, §§ 3287, 3288.

Passing, then, from the first proposition, the contention that the board of county commissioners had no legal authority to transfer the various balances to the building fund must be considered.

Section 3287, Compiled Laws of 1913, authorizes the board of county commissioners, at any regular meeting and whenever, in their judgment, there is immediate need for the erection of a courthouse or other necessary buildings, to create a building fund by resolution; and at their regular meeting in July following to transfer to this fund any unexpended balances "belonging to the road and bridge fund, penalty and interest fund, or emergency fund, after current bills or authorized expenditures against said funds have been audited and paid," etc. Section 3288 authorizes the transfer of any "unexpended balance of any special fund . . . to any other fund of the county or subdivisions to which such balance belongs." It is argued that § 3287 does not authorize the transfer of the bridge fund. True, under § 2150, Compiled Laws of 1913, separate levies are authorized for roads and bridges. One is made as a bridge tax (not to exceed 2 mills on the dollar), and one as a road tax (not to exceed 5 mills on the dollar). Additional provision is made for a poll tax of $1.50 for every male person between the ages of twenty-one and fifty "for roads and bridges." But whether the expression "road and bridge fund" in § 3287, authorizing the transfer, refers only to the fund resulting from the poll tax provided by § 2150, or whether it was really intended as a short designation of the funds resulting from the separate levies for roads and bridges, we need not determine; for, in our opinion, if the transfer of $11,000 from the bridge fund was not authorized by § 3287, it was authorized by § 3288; as the bridge fund would then be a special fund within the meaning of that section. But it is contended that, since § 3288 only authorizes the transfer when all claims against such funds have been fully paid and the purpose for which it was created fully subserved, no transfer could be made of the bridge fund as a special fund under this section so long as there was any claim whatsoever outstanding against the fund. In our opinion, this contention is without merit, although it must be conceded that it finds plausible support in the literal construction of the section. But the literal meaning is not to be followed in preference to a reasonable construction where it can serve no purpose whatsoever and where it might tend to defeat the manifest object of the section. The manifest interest

to be subserved by a statute of this character is to permit the immediate employment, in some authorized direction, of balances which would otherwise presumably lie unused. It thus avoids the necessity of levying added taxes for immediate use while ample funds levied for other purposes lie unused. The wisdom of this policy was foreshadowed in the Constitution by the express recognition in § 130 of the probable need for transferring money from one fund to another, with the limitation that it should not be diverted from the original purpose "except by authority of law." To adopt the literal construction contended for would necessitate going the full length of the appellant's argument, wherein it is contended that no transfer could be made, no difference how large the certain balance, so long as any claim, no matter how small, was outstanding. The statute secures to creditors the right to collect their claims against the special funds levied, for the purpose of accomplishing which the debts were contracted; and obviously any attempt to transfer a special fund in such manner as to embarrass the collection of a claim would be futile. But no attempt to defeat creditors is shown here.

The fact that the fund in which the balance exists was one that would prospectively require added revenues to meet anticipated expenditures for a similar purpose in the current fiscal year does not limit the authority to transfer the unexpended balance, under either § 3287 or § 3288, as each levy is presumably based upon a separate budget of anticipated needs. See §§ 3312–3314, Compiled Laws of 1913. For the foregoing reasons we are of the opinion that ample authority existed for the transfer referred to.

The main argument on the illegality in the letting of the contract is drawn from § 3280, Compiled Laws of 1913, which makes it the duty of the county board to submit to the people of the county, at a regular or special election, any question involving an extraordinary outlay of money, or an expenditure greater in amount than can be provided for by the annual tax, or the construction of any courthouse, jail, or other public building, "by establishing a building fund to aid in the construction of the same." Section 3280 must be read in connection with § 3294, which provides as follows: "The board shall have authority under the provisions of this article to provide for the erection and repairing of courthouses, jails and other necessary buildings within and for

the county, and to make contracts on behalf of the county for the building and repairing of the same; but no expenditure for the purpose herein named greater than can be paid out of the annual revenue of the county for the current year shall be made unless the question of such expenditure shall have first been submitted to a vote of the qualified electors of such county and shall have been approved by a majority of the votes so cast; and the board shall determine the amount and rate of taxes to be submitted to a vote for such purpose."

This statute operates as a restriction upon prospective expenditures and contracts involving a sum in excess of the annual revenue. As the contract in question is not to be discharged by expenditures of future annual revenue, it does not involve a violation of that section, and for the same reason it is not within the rule applied in State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585. Section 3280, upon the other hand, is designed in part, at least, to prevent the construction of courthouses, jails, or other public buildings without a vote of the people, when it is planned to construct them out of a building fund created for the purpose and which may be comprised of the proceeds of special building taxes levied under § 3284, as well as unexpended balances transferred under §§ 3287 and 3288. It does not contemplate a situation where the unexpended balances in any one year will be great enough to accomplish the desired object. And it is hardly conceivable that such a situation would arise except in a new county and under circumstances such as are present in the instant case.

That this statute was not intended to apply to a situation such as is presented in this case is further evidenced by the fact that it refers expressly to the building of courthouses and other public buildings by establishing a building fund "when the board shall consider the permanent buildings of the county, aforesaid, inadequate for the needs of its business." In the instant case it is obvious that the county had no permanent buildings. It had expended an amount of money for records which was more than twice the cost of the new building, and this could clearly be done without a vote. Furthermore, the same section provides for a vote upon the question of "whether it will aid in constructing or construct any highway or bridge." Section 3283 provides for a vote upon the question of establishing a building fund which must be accompanied by a proposition to levy a tax in addition to the usual tax re-

quired to be levied, and § 3284 provides that the rate of tax for the building fund shall be sufficient to raise the fund to the required amount within six years, and it further provides that when the "object is to construct or aid in constructing any road or bridge, the annual tax shall not exceed 1 mill on the dollar of valuation." Considering the various sections referred to together, it is apparent that the vote referred to in § 3280, as being a prerequisite to the construction of public buildings or aiding in the construction of highways and bridges, is a vote upon such questions when the levying of taxes to provide the funds therefor is contemplated; or, possibly, it was intended, in the case of county buildings, where such buildings already exist, to require a vote before a new building could be built by using a building fund accumulated by gradual accretions of unexpended balances. It may be that it was designed to prevent the use of such balances without popular vote where they result from levies for other purposes which had purposely been made high with a view to the subsequent transfer. So construed, the statute would defeat any attempt to thus evade the requirement of a popular vote on a building tax. That does not apply in this case, for the building fund was manifestly legally created under §§ 3287 and 3288.

To apply the statute literally would result in making it necessary to call a popular election before any road could be constructed or bridge built from the proceeds of the taxes regularly levied for those purposes. This absurdity was clearly not intended. We are of the opinion that § 3280 was not violated in the instant case.

The foregoing discussion considers all questions raised by the appellant which go to the authority of the board of county commissioners to proceed with the construction of a courthouse. Some minor questions are also raised which, in view of the state of the record and of facts of which the court may well take judicial notice, we deem it unnecessary to consider. The record shows that the building was practically completed at the time of the trial of the action, and the trial court found that approximately one half of the contract price had been paid. It is not contended that the building is not well worth the contract price. The court takes judicial notice of the fact that, at the time this suit was started, a contest had either begun or was in immediate anticipation to determine the permanent location of the county seat, and that during

the pendency of this appeal this question has been determined in favor of Carson, the temporary county seat, at which place the building in question was erected. From this it follows that the county is obtaining the benefit of the building so constructed. This has a proper bearing upon the equity of the plaintiff, who still claims the right to enjoin payment for the building.

For the foregoing reasons, the judgment appealed from is in all things affirmed.

GRACE, J. (dissenting).   Section 3280 of the Compiled Laws of 1913, which relates to the power of the board of county commissioners, reads thus: "It shall submit to the people of the county at any regular or special election any question involving an extraordinary outlay of money by the county or any expenditure greater in amount than can be provided for by the annual tax, or the construction of any courthouse, jail or other public building by establishing a building fund to aid in the construction of the same when the board shall consider the permanent buildings of the county aforesaid, inadequate for the needs of its business, and that it is not to the best interests of the county to issue bonds to aid in such construction or for the construction of such buildings by any other procedure as is, or may be provided by law, or whether it will aid in constructing or construct any highway or bridge."

The above section was wisely enacted by the legislature to place it beyond the power of boards of county commissioners to expend any large or extraordinary sum of money for any purpose without first having submitted the proposition of expending such extraordinary outlay of money at a regular or special election. The board is not prohibited from expending any amount of money that is not greater than the amount that can be provided for by the annual tax. Whatever amount of money the annual tax for a given purpose may be, that the board can expend without any further authority and without the necessity of a vote by the people and be approved by them by a majority vote. State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585. In the Getchell Case, this court construed § 607 of the Compiled Laws of 1887. Section 607 of the Compiled Laws of 1887, which is practically identical with §§ 3280 and 3294, reads thus: "Said board shall have authority and power under the provisions of this chap-

ter to provide for the erection and repairing of courthouses, jails, and other necessary buildings within and for the county, and to make contracts on behalf of the county for the building or repairing of the same; but no expenditure for the purpose herein named greater than can be paid out of the annual revenue of the county for the current year shall be made unless the question of such expenditure shall have first been submitted to a vote of the qualified voters of such county and shall have been approved by a majority of the votes so cast; and the board shall determine the amount and rate of taxes to be submitted to a vote for such purpose." This court in the opinion in that case, speaking through Judge Corliss, used the following language: "The contract was made in October, 1891, and it was admitted upon the hearing that the question of making such expenditure was never submitted to a vote of the people of such county. It is practically conceded that under these facts the contract is void under § 607, Compiled Laws, unless the illegal action of the board of county commissioners in making this contract was subsequently ratified. But the court had no evidence of ratification before it. It is true that it is stated in the petition and affidavit of relator that the board of county commissioners accepted the work. But this does not constitute ratification. What the board could not do in the first instance it could not thereafter make valid by ratification. *The power must come from a higher source,—the vote of the people.* It is not a case where there has been some irregularity in the exercise of a power vested in the board. It is a usurpation of power by the board which the legislature in express terms has withheld from the board and vested in the people and in the people alone."

Section 3294, Compiled Laws of 1913, cited in the opinion, is largely the same as § 3280, so far as not permitting any extraordinary outlay of money without first submitting the proposition to the voters and obtaining their approval thereof by a majority vote. So far as these two sections are concerned in the respect we have discussed them, they are completely and wholly nullified. Under the majority opinion, county commissioners can expend any sum of money they see fit without submitting the proposition of expending such money to a vote of the people. The majority opinion is in strict opposition to the plain letter and spirit of each of said sections, and most assuredly is strictly against public policy. It also, in effect, overrules the case of State ex rel. Die-

bold Safe & Lock Co. v. Getchell, above cited. The language of § 3280 is also very plain, to the effect that every proposition for the construction of a courthouse, jail, or other public building should be submitted to a vote of the people and approved by a majority vote thereof.