STATE OF NORTH DAKOTA, EX REL., C. J. Kopriva, County Auditor of Burke County, North Dakota, Respondent, v. LAWRENCE LARSON and the FIRST NATIONAL BANK OF BOWBELLS, N. D., a corporation, Appellants.

(189 N. W. 626.)

Mandamus — national bank, acting as legal depositary, occupies quasi offifiicial position.

1. A national bank acting as a legal depositary, and depositary of county funds, occupies a position quasi official in its character.

Mandamus — appropriate remedy against former county treasurer and legal depositary to compel payment of public funds.

2. Mandamus is an appropriate remedy against a former county treasurer and a bank, acting as a legal depositary, to compel the payment of public funds placed upon time deposit.

**Mandamus — county auditor is proper relator in proceedings to compel former treasurer and bank to pay public money deposited.**

3. The county auditor, by reason of the connection of his duties, is a proper person to appear as relator in such proceedings.

**Depositaries — statute section held not to repeal powers of county commissioners to designate legal depositaries.**

4. Section 7 of chap. 147, Laws 1919 (Bank of North Dakota Act) and article 11 of chap. 42 of the Political Code (§§ 3315—3329 C. L. 1913) are construed, and it is *held*, that the powers of county commissioners to designate legal depositaries and to direct the placing of county funds upon time deposit were not repealed by said § 7.

**Counties — commissioners must act as a board at proper meetings.**

5. County commissioners must act as a board and through action taken at proper meetings.

**Depositaries — commissioners may not direct time deposit of county funds for more than year.**

6. Section 3319 Comp. Laws 1913 construed, and it is *held*, that county commissioners have no authority to direct a time deposit of county funds for a longer period than one year.

**Depositaries — deposit of county funds by county treasurer without commissioners' assent held unauthorized, and commissioners held without authority to place funds for period of longer than one year.**

7. Where a former county treasurer, shortly before the expiration of his term of office, deposited approximately $166,000.00 of county funds upon time deposit in various banks of the county, without the formal consent or direction of the county commissioners, and, where thereafter the county commissioners, by formal resolution, set apart $50,000.00 of such moneys upon time deposit in a sinking fund, which amount, pursuant to certificates of deposit, did not become due for more than one year thereafter, it is *held*, that the disposition of such public moneys by the county treasurer was unauthorized and that the county commissioners had no authority to place public funds upon time deposit for a longer period than one year.

Opinion filed June 5, 1922.    Rehearing denied June 27, 1922.

Mandamus proceeding in District court, Burke county, *Lowe* J., against a former county treasurer and a national bank. Defendants have appealed from the writ of mandamus awarded.

Affirmed, subject to the right of the defendant bank to make full pay-

ment and to the right of the county commissioners to exercise their powers.

*Palda & Aaker,* for appellants.

The duties which mandamus will enforce must be such as results from an office, trust, or station. This is clear from the wording of our statute. 8457 C. L. 1913; 26 Cyc. 163; State ex rel. v. Piper, 50 Neb. 25, 39, 40, 69 N. W. 378; Laflin v. State, 49 Neb. 614, 68 N. W. 1022.

These acts which may be compelled by mandamus are ministerial acts as distinguished from acts which are quasi-judicial or discretionary. State v. Stutsman, 24 N. D. 68, 139 N. W. 83, 89 Ann. Cas. 1914D, 776.

Where a party has a legal right to the enjoyment of which the discharge of a ministerial duty on the part of a public officer is necessary, and he has no other adequate remedy, in case the officer refuses to discharge his duty, mandamus is the proper proceeding. High Extra. Leg. Rem. § 34, et seq.; State v. Whitesides, 30 S. C. 579, 9 S. E. 661, 3 L. R. A. 777.

"A writ of mandamus runs only against the officer who is to do the particular official act commanded and should be addressed to him in his official capacity." "An action for mandamus is to be regarded as a proceeding against an officer, and not against the individual." Placard v. State, 148 Ind. 305, 47 N. E. 623, (B.) No clear right shown.

Mandamus will not issue to enforce a right which is in substantial dispute. 26 Cyc. 153, Citing, Williams v. Smith, 6 Cal. 91; Davis v. Hewett, 69 Kan. 651, 77 Pac. 704.

The undoubted rule of law is that where the act to be performed is beyond the power of the defendant, the writ will not issue. 26 Cyc. 167.

The peremptory writ will not ordinarily be awarded commanding an officer to do what is not within his power to do; and although he may have placed it out of his power to perform his duty, and may be liable in damages therefor, still, where he cannot perform the act, and this is clear to the court, the peremptory writ will not ordinarily be issued against him. Duval Co. Comm. v. City, 30 Fla. 196, 18 Ia. 339, 29 L. R. A. 416.

Mandamus will not lie to compel the tax collector of one county to pay over to the collector of another county taxes belonging to the latter county which he has unlawfully collected, as mandamus cannot serve the purpose of an action for money had and received. Kings Co. v. Johnson, 104 Cal. 198, 37 Pac. 870; Territory v. Crum, 13 Okla. 9, 73 Pac. 297.

The writ of mandamus can issue in all cases where there is not a plain, speedy or adequate remedy in the ordinary course of law. If there is such remedy in the ordinary course of law, it is very clear this writ cannot be invoked. Territory ex rel. Co. Com. v. Cavanaugh, 3 Dak. 325, 19 N. W. 413; State ex rel. v. District Court, 13 N. D. 211, 100 N. W. 248. Taubman v. Aurora Court, 14 S. D. 206, 84 N. W. 784; Stover v. Keith, Neb., 67 N. W. 313; Also in Note to 13 Pac. 846; Cited in Note to 98 Am. St. Rep. 865.

"The statutes of the state assimilated the mandamus proceeding to a civil action but have not made it a civil action, as is done in the case of quo warrants." State ex rel. v. Carey, 2 N. D. 36, 49 N. W. 164.

*E. R. Sinkler,* for respondent.

The money was a trust fund in the hands of the bank, that the relationship of principal and agent existed with respect to such money; that the money notwithstanding the certificates of deposit was at all times on checking account and subject to demand, that regardless of the subterfuge of the certificates of deposit the money was on demand deposit.

Mandamus will lie to compel the principal, that is, the treasurer and his agents to turn over what rightfully belongs to the office, and this money was a part of the office. State v. Hill, 66 N. W. 550 and cases cited.

"The county commissioners have only such powers as are granted them by statute." Fox v. Walley, 31 N. D. 610; Kas. v. State, 88 N. W. 776, (Neb.)

## Statement.

BRONSON, J. This is one of several proceedings brought against a former county treasurer and a national bank. Through mandamus, the relator seeks to compel the payment of county funds by the defendant Larson, a former treasurer of Burke county, and, by the defendant bank, a depository of county funds upon time deposit.

The relator, as county auditor, has instituted this proceeding upon instructions received from the state auditor, pursuant to § 3359, C. L. 1913, which, in such case, imposes upon the auditor the duty to institute suit, where a county treasurer has failed to pay over all money with which he may stand charged. The record is long; the exhibits voluminous. No attempt will be made herein to state money figures with exactitude as if

upon an accounting. Such facts only are stated which are deemed sufficient for understanding the legal questions raised, involved, and deemed determinative in this proceeding. These facts are as follows: The defendant Larson was the county treasurer of Burke county for two terms ending on May 7, 1921, when J. R. Jensen, his successor, assumed the office. The county funds of Burke county consisted of moneys that it possessed for itself, or that it had collected for, and owed the state, or townships, school districts, cities, and villages in the county. In April, 1921, county funds were deposited either upon open account or upon time deposit in various banks of the county, including the defendant bank. Shortly before the expiration of the defendant's term of office, a meeting of the bankers in the county was held, together with the defendant Larson and the county commissioners, or some of them. The banks, theretofore designated as legal depositories, agreed to pay 6 per cent. per annum upon county funds placed with them upon time deposit. The bankers, brought with them blank certificates of deposit. The defendant Larson, with the verbal consent of the county commissioners, or some of them, as it appears, agreed to place county funds upon time certificates of deposit in such banks. Accordingly, on April 28, 1921, or thereabouts, the defendant Larson placed upon time deposits about $166,000 of county funds. For such funds certificates of deposit were issued, bearing 6 per cent. interest per annum, and falling due, respectively, in intermittent periods from July 1, 1921, until December 1, 1922. The defendant bank issued certificates of deposit as follows: No. 2616, dated April 28, 1921, due August 1, 1921, for $2,000. No. 2617, dated April 28, 1921, due Oct. 1, 1921, for $2,000. No. 2618, dated April 28, 1921, due Dec. 1, 1922, for $5,000. No. 2619, dated April 28, 1921, due Dec. 1, 1922, for $5,000. No. 2620, dated April 28, 1921, due Dec. 1, 1922, for $5,000 No. 2621, dated April 28, 1921, due Oct. 29, 1921, for $2,000.

In his testimony, the defendant Larson stated that the reasons for so doing were that there was no immediate use for such county funds, and that the county would thereby secure a higher rate of interest. The defendant, upon the surrender of his office, delivered the certificates of deposit to his successor, who refused to receive them, and demanded the money therefor. Demand was also made upon the county commissioners that suit be commenced against the former county treasurer.

On July 8, 1921, the county commissioners adopted the following resolution:

"The following named banks of Burke county, North Dakota, are

designated as depositaries to receive deposits to create a sinking fund to retire the seed and feed bond of $125,000.00 due April 1, 1926, to which certificates of deposits have been issued as follows, as there is now over fifty thousand dollars ($50,000.00) in the said seed and feed grain fund:

| Name of Bank. | Date. | Due. | Amount. | Int. |
|---|---|---|---|---|
| First National Bank, Bowbells | 4-28-21 | 12-1-22 | $6,000.00 | 6% |
| Burke County State Bank, Bowbells | 4-28-21 | 12-1-22 | $5,000.00 | 6% |
| Farmers' State Bank, Columbus | 4-28-21 | 12-1-22 | $5,000.00 | 6% |
| Farmers' State Bank, Battleview | 4-28-21 | 12-1-22 | $2,000.00 | 6% |
| First State Bank, Coteau | 4-28-21 | 12-1-22 | $3,000.00 | 6% |
| Citizens' State Bank, Flaxton | 4-28-21 | 12-1-22 | $3,000.00 | 6% |
| First Bank of Flaxton | 4-28-21 | 12-1-22 | $2,000.00 | 6% |
| First State Bank, Lignite | 4-28-21 | 12-1-22 | $3,000.00 | 6% |
| Portal State Bank, Portal | 4-28-21 | 12-1-22 | $4,000.00 | 6% |
| First International Bank, Portal | 4-28-21 | 12-1-22 | $2,000.00 | 6% |
| State Bank, Powers Lake | 4-28-21 | 12-1-22 | $6,000.00 | 6% |
| First State Bank, Powers Lake | 4-28-21 | 12-1-22 | $6,000.00 | 6% |
| First State Bank, Northgate | 4-28-21 | 12-1-22 | $3,000.00 | 6% |

It appears that there was then something over $50,000 in the seed and feed fund, the same being the unexpended proceeds of a seed and feed county loan negotiated by the county in March, 1921. The county auditor, accordingly, on July 21, 1921, instituted proceedings against the former county treasurer and the banks. The petition for the writ alleges many of the facts above stated, that the petitioner has no adequate remedy at law, and that the county will be unable to pay obligations to the state and other political subdivisions and to carry out its various governmental functions without registering warrants, unless a writ issue. The defendant interposed a demurrer, a motion to quash and an answer wherein is alleged the legality of the time deposits made. Trial was had commencing July 25, 1921. The testimony taken was made applicable to all of the cases instituted. The trial court overruled the demurrer and motion to quash. The present county treasurer testified that, on May 7, 1921, there were over $32,000 in registered warrants; that since that time $76,000 in registered warrants, had been issued; that on April 20, 1921, there were due the political subdivisions of the county about $109,000. The defendant Larson testified that, on April 15, 1921, there were due the state about $26,000 for hail insurance moneys; that when he left office there were, exclusive of the certificates of deposits, about $145,000, con-

sisting of $66,000, seed and feed moneys, and, the balance, other moneys. The present county traesurer testified that, on June 1, 1921, there were due the state from Burke county about $65,000; that then there were warrants outstanding amounting to over $109,000.00, of which $92,000 had been registered; that his cash on hand then was about $4,000 including $3,000 in unpaid certificates of deposit, and not including the seed and feed fund, then amounting to about $51,000; that the certificates of deposit, then outstanding, amounted to $144,000. It appeared also from the evidence that the present county treasurer had made deposits with the Bank of North Dakota; that many of the certificates of deposit after they became due were not paid, for the reason that garnishment actions were instituted by school districts, or townships, against the county naming the banks as garnishees.

The trial court found that the placing of the county funds upon time deposit in defendant bank was unlawful and without authority; that such action operated to deprive the county of necessary funds to conduct its ordinary business and the business of its various political subdivisions; that if such moneys should be permitted to be withheld on time deposit, the county would be unable to pay the state, and the various political subdivisions of the county, and it would be necessary for the county to register warrants and to suffer substantial and material loss of interest necessary to be paid on such warrants. A writ of mandamus was authorized and issued, directing the defendants to pay to the present county treasurer the sum of $22,000, moneys so placed on time deposit. This judgment was entered August 29, 1921. The defendants, on December 31, 1921, appealed from the judgment and orders of the trial court, and furnished a supersedeas undertaking upon appeal.

## Contentions

The defendants contend that the record does not justify the issuance of a writ of mandamus; that the relator, in any event, has no cause of action at law and no right to a writ of mandamus; that § 3359, C. L. 1913, pursuant to which the relator commenced this proceeding, does not authorize nor contemplate a mandamus proceeding; that neither of the defendants are public officers; that there is no legal duty shown resulting from an office, trust, or station such as permit the maintenance of mandamus; that the right of the defendant Larson to make the time deposits with the defendant bank as a legal depositary and to tender the

certificates of deposit issued create upon the issuance substantial dispute so as to prohibit the maintenance of mandamus; that there is shown an adequate remedy at law. Furthermore, that the laws providing for legal depositaries of county funds were not entirely repealed by the Bank of North Dakota Act; that the county commissioners had authority to designate public depositaries in January, 1921, and that the deposits made by the defendant Larson, pursuant to chap. 56, Laws of 1921, upon time deposits, were legal and proper. Such contentions are made upon numerous specifications of error concerning the rulings, findings, and orders of the trial court.

## Decision.

Mandamus—Section 8457, C. L. 1913, provides that the writ may be issued to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station. This same statutory provision has been in effect since territorial times. Section 695, Terr. Code Civil Proc. 1877. The statutes of many states have a similar provision. 26 Cyc. 163. It is, of course, a prerogative writ denominated in our statute a special proceeding. See State ex rel. Johnson v. Ely, 23 N. D. 619, 137 N. W. 834; 26 Cyc. 143. The prerequisites ordinarily necessary for the issuance of the writ are: First, the clear right of the relator to compel the performance of a particular duty; and, second, that the law affords no other plain, speedy, and adequate remedy. Strauss v. Costello, 29 N. D. 215, 150 N. W. 874. As a county official the county auditor is the proper person to institute mandamus to compel the performance of official duties with which he is concerned. 26 Cyc. 298. By law he is required to keep an accurate account current with the treasurer of his county. Section 3367, C. L. 1913. The duty to pay or account for county funds was a public duty, which concerned the county auditor as well as the county treasurer in the performance of their duties. Accordingly it was proper for the county auditor to appear as the relator in this proceeding, even if, perchance, § 3359, C. L. 1913, should be construed to refer to an action at law or to an action against a county treasurer as an existing official.

It is fairly well settled that mandamus will lie against a former official to compel the surrender of the insignia of the office, including funds belonging thereto. 26 Cyc. 258; 18 R. C. L. p. 261; State ex rel. Langer v. McDonald, 41 N. D. 389, 391, 170 N. W. 873; Frisbie v. Fogg,

78 Ind. 269; Kas v. State, 63 Neb. 581, 88 N. W. 776; Butler v. Callahan, 4 N. D. 481, 488, 61 N. W. 1025; note 31, L. R. A. 342. Mandamus may also lie to enforce the performance of a duty by one who, although not a public official, occupies a relation quasi official in its character. 26 Cyc. 387. See Haines v. People, 19 Ill. App. 354; State v. Cadwallader, 172 Ind. 619, 87 N. E. 644, 89 N. E. 319. Thus, in Belcher v. First National Bank, 81 W Va. 316, 94 S. E. 380, mandamus was held to be an appropriate remedy to compel certain banks, county depositories, under the Depository Act, to credit the sheriff with certain interest and to pay his lawful orders drawn thereupon. So in Nye v. Rose, 17 R. I. 733, 24 Atl. 777, mandamus was appropriate against a person appointed as commissioner of a certain sinking fund, established without legislative authority, although he was not a public official nor an offical de facto, to compel him to pay over the fund to the persons authorized to receive the same. In the case at bar, the defendants contend, and have asserted in their answer, that the defendant bank was a legal depositary; they base their claim and right to withhold the time deposits upon the ground that such defendant bank is a legal *depositary,* as well as a *depository.* For reasons hereinafter stated, concerning the interpretation of the law applicable, the defendant bank was a legal *depositary* pursuant to §§ 3315— 3329, C. L. 1913, as well as a *depository* for county funds. It held, accordingly, with relation to the county, a position quasi official in its character. 18 C. J. 579. The case of Territory v. Cavanaugh, 3 Dak. 325, 19 N. W. 413, cited in support of defendant's contention, may be readily distinguished. It involved a proceeding of mandamus to compel the payment of $400 claimed by a county official as his rightful commission. It is well settled that mandamus cannot be used either to try the title to office or to property. In this case there is no dispute that the funds involved are public funds. The question involved concerns the disposition of such funds upon deposit. Manifestly, in determining the administration of governmental funds properly, speedily, and adequately, mandamus upon this record, is an appropriate proceeding. We so determine.

### Legal Depositaries.

Were the time deposits, made by the former county treasurer, authorized and legal? Was the resolution of the county commissioners concerning such time deposits in all respects legal and effective? The an-

swer to these two questions depends upon the construction and interpretation of constitutional and statutory provisions concerning county funds and depositaries.

Pursuant to constitutional, as well as statutory, provisions, the duty to supervise and control fiscal affairs of the county is imposed upon the county commissioners. Section 172, Const.; § 3276, C. L. 1913; Boettcher v. McDowall, 43 N. D. 178, 174 N. W. 759, 761.

Pursuant to article 11 of chap. 42 of the Political Code (§§ 3315—3329, C. L. 1913) the county commissioners, concerning depositaries of county funds, were empowered to designate either national or state banks as county depositaries in which all of the funds of such counties should be deposited, and, further, concerning sinking funds and other county funds in excess of $1,000 for which there was no immediate use, to direct time deposits thereof for a period of one year in a county depositary as created by law or in such state or national bank as the county commissioners might designate.

The act creating the Bank of North Dakota (chap. 147, Laws 1919) became a law February 25, 1919. Section 7 thereof provides as follows:

"All state, county, township, municipal and school district funds, and all funds of all penal, educational and industrial institutions and all other public funds shall be, by the person having control of such funds, deposited in the Bank of North Dakota within three months from the passage and approval of this act, subject to disbursement for public purposes on checks drawn by the proper officials in the manner now or hereafter to be provided by law; provided, however, that on a proper showing made by any official having control of public funds, the Industrial Commission may permit a postponement * * * not to exceed six months. And provided, further, that if any such funds are now loaned by authority of law under a contract terminating at a future time, then the deposit of such funds in the Bank of North Dakota shall not be required until two months after time of expiration of such contract."

Section 25 thereof provides as follows:

All acts and parts of acts inconsistent with this act are hereby repealed."

Did the Bank of North Dakota Act wholly or partially repeal the provisions of said article 11 (§§ 3315—3329, C. L. 1913)? This act required the deposit of all county funds in the Bank of North Dakota. Manifestly, pursuant to its terms, legal depositaries that had been designated, or that might be designated, within a period of three months

after the passage of the act by the county commissioners, continued proper and legal depositaries of county funds. Further, legal depositaries established by the county commissioners or that might be established by such county commissoners within a period of six months after the passage of the act might remain proper depositories of county funds through permission of the Industrial Commission. Furthermore, such legal depositaries designated by the county commissioners might remain depositories for funds, loaned under authority of law under contract terminating at a future time, for a period of time extending two months after the expiration of such contract. From the terms of the Bank Act, it appears that the powers of the county commissioners to designate legal depositaries, pursuant to the provisions of article 11, were not repealed nor taken away upon the passage and approval of the act. Further, the act does not contemplate the repeal of the powers of the county commissioners to supervise and control the fiscal affairs of the county. The Bank Act served to designate by law a legal depository of county funds in which all county funds must be deposited, pursuant to and dependent upon its terms. The act did not pretend to deprive the county commissioners of the power to contract with the Bank of North Dakota concerning time deposits. The act did serve, by its express terms, to suspend the right of any legal depositary designated by the county commissioners other than the Bank of North Dakota to receive or retain any county funds excepting such as the Bank Act expressly permitted. The word "repeal" may be used in a limited sense. Sutherland Stat. Const. § 137. It is a mere retptition now to state that repeals, by implication, are not favored. The provisions in the Bank Act repealing all acts and parts of acts inconsistent therewith assumes the existence of statutory laws repugnant to such Bank Act. It assumes to repeal to the extent of any repugnancy, but no farther. Sutherland, Stat. Const. § 147. The use of such phraseology is an express limitation upon the extent to which it was intended that former acts should cease to be in operation. Such phraseology does not serve to create, by implication, legislative intent for a more extensive repeal or suspension. Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614; Co-op. Savings & Loan Ass'n v. Fawick, 11 S. D. 589, 79 N. W. 847; 36 Cyc. 1097; 25 R. C. L. p. 912. The repugnancy of existing statutes to the Bank Act is removed by suspending the power of a legal depositary to act as a depository contrary to the terms of the Bank Act. No repugnancy exists in permitting former statutes to survive concerning the designation of legal de-

positaries; the Bank Act, by its terms, expressly contemplated the continuance of legal depositaries dependent upon the inhibitions prescribed to act as depositories. Upon such principles of construction, the provisions of the Bank Act concerning the deposits of county funds may be made harmonious with the constitutional powers of county commissioners and the statutory authority provided thereunder and then existing at the time of the adoption of the Bank Act.

Pursuant to the initiated law, adopted by the electors at the general election on November 2, 1920, § 7 of the Bank Act (chap. 147, Laws 1919) was amended and re-enacted (Laws 1921, p. 255) so as to read as follows:

"All State funds, and funds of all state, penal, educational and industrial institutions shall be, by the persons having control of such funds, deposited in the Bank of North Dakota."

Accordingly, when such initiated act became a law, no mandatory requirement remained that county funds be deposited in the Bank of North Dakota. The Bank of North Dakota, however, continued to be a proper bank, wherein deposits of county funds might be made. Section 9, chap. 147, Laws 1919.

Chap. 56, Laws 1921, became a law March 8, 1921: It provides, among other things, that all state and national banks complying with the provisions of the act, and the Bank of North Dakota, are declared to be legal depositaries of public funds of counties, etc.; that before any deposit shall be made in any depository, such depository shall furnish a bond subject to approval as to its amount and sufficiency by the governing board of the corporation (for a county meaning the county commissioners). In this opinion the word "depositary" has been used to denote a person with whom, and the word "depository," to denote a place in which, public moneys may be deposited for safe-keeping. 18 C. J. 562. It may be noted that the legislative acts have also used these words advisedly. This act (chap. 56, Laws 1921) by law, makes all banks legal depositaries. Such banks may qualify as depositories by further complying with the terms of the act. Such act, at least impliedly, recognizes duties and powers of the county commissioners and of the county treasurer, as prescribed in said article 11. This act does not prescribe concerning the deposit of sinking funds, or other funds, of a county, upon time deposit, although the act otherwise requires reports to be made by the depository showing time deposits and demand deposits and rates of interest paid therefor. The act does not prescribe concerning the duty

of the county treasurer in distributing county funds in the depositaries who have qualified as depositories. The provisions of said article 11 do prescribe concerning the duties of the county commissioners and the county treasurer in regard to such matters.

These statutory provisions hereinbefore mentioned accordingly were applicable when the former county treasurer deposited upon time deposit the sum of approximately $166,000. There is evidence in the record that such time deposits were made with the consent or advice of the whole or part of the county commissioners. This consent and advice, however, does not appear from the record to have been through any formal action or at any meeting of the county commissioners. The powers conferred upon the county commissioners to designate legal depositories, or to direct time deposits, is a power requiring formal action by the county commissioners. They act as a board, and through action taken at proper meetings. Section 3290, C. L. 1913; 15 C. J. 460. See State ex rel. Lemke v. Ry. (N. D.) 179 N. W. 378; State ex rel. Lemke v. Power Co. (N. D.) 182 N. W. 539; Schwanbeck v. People, 15 Colo. 64, 24 Pac. 575; Schumm v. Seymour, 24 N. J. Eq. 143. Accordingly, the treasurer may not successfully assert the deposit of county funds upon time with the consent and advice of the county commissioners, unless he is able to establish in the record that the county commissioners, as a body, so gave its consent and advice. The record does not so establish. Consequently, the action of the former county treasurer in depositing such county funds upon time was unauthorized and improper.

The formal resolution of the county commissioners, dated July 8, 1921, placed $50,000 out of the certificates of deposits issued, pursuant to the arrangement made with the former county treasurer in a sinking fund for the seed and feed bonds. All of these certificates are dated April 28, 1921, and become due December 1, 1922. The relator maintains that the county commissioners had no authority to place unexpended proceeds of the seed and feed bonds in the sinking fund therefor. It is unnecessary to either consider or decide this question. As hereinbefore discussed, the county commissioners did have power and authority to place money upon time deposit pursuant to the provisions of § 3319, C. L. 1913; either moneys of a sinking fund or other county funds for which there was no immediate use. The county commissioners, as hereinbefore stated, also have supervision and control over the fiscal affairs of the county, subject to the limitations imposed by statute. Section 3319, C. L. 1913, imposes the limitation of one year as a period of time

for which county funds may be placed upon time deposit. The power granted concerning sinking funds in the seed and feed act does not pretend to extend this limit of time. Chap. 13, Spec. Sess. L. 1918; chap. 177, Laws 1919; chap. 54, Spec. Sess. 1919. This specific provision contained in § 3319, C. L. 1913, provides that—

The county commissioners "shall direct a time deposit of such funds for a period of one year, as they may deem expedient, either in one or more of the county depositories as created by law, or such state or national banks as said board of county commissioners may designate."

This specific provision, before its amendment by legislative act in 1903, provided as follows:

"The board of county commissioners are authorized and empowered to direct a time deposit of such funds for a period of one year, or six months, as they may deem expedient, either in one or more of the county depositories as created by law, or such state or national bank as said board of county commissioners may designate." Chap. 75, § 1, Laws 1903.

It will be noted that under the former law a deposit upon time could be made for a period of one year or six months; that the words "as they may deem expedient," present both before and after the amendment was made, refer to the succeeding phrase, and do not serve to enlarge a discretion which the legislature intended to limit. Considerations of public policy also apply in holding, upon construction, a definite limit of time to apply. 5 C. J. 542. It is readily observable that the interest rate upon a time deposit due in one year (and which is capable of being renewed) is greater than time deposit for a longer period, although the interest rate prescribed be the same for both. It follows that on July 8, 1921, the moneys placed on time deposit in the various banks by the former county treasurer were really in law deposits payable on demand; that on July 8, 1921, the county commissioners had no authority to place such deposits upon time deposit for a period of more than one year. At this time it is manifest that all moneys so placed upon time deposit by the former county treasurer have become due and payable, excepting the certificates of deposit due December 1, 1922. It is to be presumed that the banks have paid such certificates that have become due. The questions upon such certificates, therefore, have become moot, excepting those due December 1, 1922. Full consideration, however, has been given in this opinion to the proper construction and interpretation of the present depositary laws applicable to county funds, by reason of their importance in the administration of public funds in this state, and as affecting the

questions involved in this action. The defendant bank, upon this record, should pay interest at 6 per cent. per annum upon the certificates of deposit issued by it, pursuant to the arrangement made with the former county treasurer and the county commissioners, up to and until the time of payment thereof. 18 C. J. 594. It is ordered, accordingly, that the writ of mandamus issued by the trial court be affirmed subject to the right of the defendant bank to make full payment to the present county treasurer, or to the right of the county commissioners to direct the deposits of county funds concerned and involved herein, all within a period of 15 days from the time the remittitur is filed in this proceeding. Neither party will recover costs on this appeal.

ROBINSON, J., concurs.

GRACE, J. (specially concurring). In my opinion the principal question presented is whether the trial court properly issued the writ of mandamus. I am of the opinion that the writ was properly issued.

CHRISTIANSON, J. (dissenting). I dissent. In my opinion mandamus does not lie under the facts in this case. In this state "the writ of mandamus may be issued by the Supreme Court and district courts to any inferior tribunal, corporation, board or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." (Section 8457, C. L. 1913.) The writ of mandamus cannot be employed to supersede legal remedies, but is intended to furnish a remedy where no adequate legal remedy is provided. Strauss v. Costello, 29 N. D. 215, 150 N. W. 874; § 8458, C. L. 1913. In this case the defendant Lawrence Larson, while county treasurer of Burke county, made certain time deposits of funds in his hands as such county treasurer. Among others he made such deposits with the defendant bank, and received therefor time certificates of deposit. It is undisputed that, at the time his successor in office qualified, said Larson turned over to him everything then in his possession as county treasurer, including such certificates of deposit. In this case it is sought to have the said Lawrence Larson and the bank which received such deposits and issued such time certificates compelled by writ of mandamus to pay over at once the moneys so deposited. In the petition herein the petitioner prays that—

"An alternative writ of mandamus issue out of and under the seal of this court, directed to the said Lawrence Larson and to his agent, First

National Bank of Bowbells, commanding them forthwith to turn over and deliver to the said J. R. Jensen, the duly elected, qualified, and acting treasurer of Burke county, N. D., the sums of money and funds rightfully belonging to the said J. R. Jensen, as treasurer of Burke county, N. D., which are so wrongfully and unlawfully withheld and retained by the said Lawrence Larson and the said First National Bank of Bowbells."

The alternative writ issued upon the petition states:

"I do command and enjoin you, Lawrence Larson, and First National Bank of Bowbells, that immediately upon the receipt of this writ, to turn over and deliver to the said J. R. Jensen the duly elected, qualified, and acting county treasurer of Burke county, N. D., the sum of $19,000, being the funds and money rightfully belonging to the said J. R. Jensen, as treasurer of Burke county, N. D., or in default thereof to show cause," etc.

It is not contended that the said Lawrence Larson did not at the expiration of his term of office turn over all the records and property held by him as county treasurer to his successor in office. On the contrary, it is undisputed that the said Larson did turn over to his successor in office everything in his possession as county treasurer, including the certificates of deposit which he had received from the different banks. It is also undisputed that the present county treasurer has collected a large number of such certificates of deposit when and as they became due. Larson has had no possession of or control over any of the funds which he formerly held as county treasurer or over the certificates of deposit at any time since his term of office expired. Hence this is not a case where a county treasurer at the expiration of his term refuses to turn over to his successor in office either property or moneys in his possession or under his control, and mandamus is invoked for the purpose of compelling him to surrender the same to his successor, and authorities dealing with that situation are not applicable here. The real object of this proceeding is to compel a county treasurer, whose term of office has expired, to make restitution of certain moneys, which he, while in office, placed on time deposit, and to compel the bank in which such time deposit was made to pay over the funds so deposited in disregard of the terms of the certificates of deposit. In other words, it sought by mandamus to undo that which has been done. Manadmus is a writ to compel action, and not to undo that which has been done. 19 Am. & Eng. Ency. L. p. 743; 13 Ency. Pl. & Prac. 497; Merrill on Mandamus, §§ 42,

43; Gow v. Bingham et al., 57 Misc. Rep. 66, 107 N. Y. Supp. 1011; State v. Jacobs, 103 App. Div. 86, 92 N. Y. Supp. 590; State v. Bowman, 66 S. C. 140, 44 S. E. 569; State v. Ross, 39 Wash. 399, 81 Pac. 865; State v. Willett, 117 Tenn. 334, 97 S. W. 299.

In Gow v. Bingham et al., supra, the court said:

"In the absence of special statutory authority, a writ of mandamus only lies to compel one to do what ought to be done in the discharge of a public duty, and not to undo what is improperly done, even though it may have been done under the color of performance of public duty." 57 Misc. Rep. 75, 107 N. Y. Supp. 1018.

Nor will mandamus issue against an officer, after the expiration of his term of office, unless the power and the duty to act still continue. 19 Am. & Eng. Ency. L. 763; 18R. C. L. pp. 120, 121.

BIRDZELL, C. J., concurs.